UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JARVIS BROWN | CIVIL ACTION NO. 19-1004 |
| | SECTION P |
| VS. | |
| | JUDGE ELIZABETH E. FOOTE |
| JAMES M. LEBLANC, ET AL. | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Plaintiff Jarvis Brown, a prisoner at the Louisiana State Penitentiary proceeding pro se and in forma pauperis, filed the instant proceeding on August 1, 2019, under 42 U.S.C. § 1983. He names the following defendants: Secretary James M. LeBlanc, Regional Warden Jerry W. Goodwin, Captain Johnny White, Sergeant Reginald Kilder,[1] Colonel Lonnie Nail, Warden Robert Rachel, Warden Sherman.[2]  For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff claims that, on May 28, 2019, at David Wade Correctional Center, Captain White and Sergeant Kilder falsely accused him of flooding his cell. [doc. # 1, p. 4]. Plaintiff claims that, because he complained that Kilder sweated and coughed while handling Plaintiff's food and drink, White and Kilder retaliated, placing him in a strip cell where the "water was off" for twenty-four hours, clothing him in a gown, losing or destroying his shower shoes and clothing, verbally abusing him, and sexually abusing him. [doc. #s 1, p. 4; 10-1, pp. 5-7].

---

[1] Plaintiff provides alternative spellings: "Kibler" and "Kibeler." [doc. # 10-1, pp. 3-4].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff claims that Kilder and White violated Louisiana Department of Public Safety and Corrections' policy when they placed him in a strip cell. [doc. # 10-1, p. 7]. Because of his time in the strip cell, Plaintiff was traumatized and endured "emotional injury." *Id.* at 5.

Plaintiff claims that Captain White and Sergeant Kilder lost his "gray Hanes sweater," his "pair of white long Hanes socks," his pair of gray Hanes socks, his "white Hanes T-shirt," and his "pair of Hanes boxers . . . ." *Id.* at 4, 7.

On June 4, 2019, at a disciplinary hearing, Colonel Lonnie Nail found Plaintiff guilty of flooding his cell and sentenced him to ten days in isolation. [doc. #s 10-1, p. 5; 10-2, pp. 6-7]. Plaintiff faults Nail for failing to investigate the allegations in White and Kilder's disciplinary reports before making a finding and sentencing him. [doc. # 10-1, p. 5]. He also faults Nail for finding him guilty on insufficient evidence. *Id.* at 7.

Plaintiff claims that Warden Goodwin and Deputy Warden Rachel failed to answer his "lost property claim form," in which he requested the return of his property that Captain White and Sergeant Kilder allegedly lost. *Id.* at 4, 7.

Plaintiff claims that, on June 26, 2019, Colonel Lonnie Nail failed to mail a letter Plaintiff attempted to send to an attorney in Pittsburg, Pennsylvania. *Id.* at 5, 8. Plaintiff suggests that Nail either lost or stole the letter. *Id.* Plaintiff also faults Assistant Warden Kayla Sherman because Sherman "is in charge of/responsible for" the legal mailing system. *Id.* at 8.

Plaintiff claims, generally, that Secretary LeBlanc and Warden Goodwin are "responsible for failure to train/supervise Defendants" Rachel, Sherman, Nail, White, and Kilder. *Id.* at 4.

Plaintiff suffered emotional injuries, mental distress, and "'de minimis' injuries of back pain/neck pain" because of his time in the strip cell and in isolation. *Id.* at 8. He seeks compensation for his lost property, $250,000.00, and nominal, declaratory, punitive, and

injunctive relief. [doc. #s 1, p. 5; 10, p. 4; 10-1, pp. 2, 9-10]. He also asks the Court to terminate or suspend Defendants' employment "and/or" imprison Defendants. [doc. # 10, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights

4

complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. False Disciplinary Charges and Inadequate Procedural Due Process

Plaintiff claims that, on May 28, 2019, at David Wade Correctional Center, Captain White and Sergeant Kilder falsely accused him of flooding his cell. [doc. # 1, p. 4]. On June 4, 2019, at a disciplinary hearing, Colonel Lonnie Nail found Plaintiff guilty of flooding his cell and sentenced him to ten days in isolation. [doc. #s 10-1, p. 5; 10-2, pp. 6-7]. Plaintiff faults Nail for failing to investigate the allegations in White and Kilder's disciplinary reports before making a finding and sentencing him. [doc. # 10-1, p. 5]. He also faults Nail for finding him guilty on insufficient evidence. *Id.* at 7.

However, because Plaintiff's punishment does not implicate a protected property or liberty interest, he does not state a plausible claim. See *Carter v. Brown*, 772 F. App'x 67, 68 (5th Cir. 2019) (finding, where the plaintiff argued "that he was falsely charged and convicted at a hearing that violated established procedures, [and] relied on false evidence," that the plaintiff did not allege "a due process violation" because his punishment did not "implicate a protected liberty interest[.]"

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (quoting *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[4]

Here, the Court must determine whether Plaintiff's isolation constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which

---

[4] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

6

the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (cited with approval by *Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.*

With all of that said, however, the "Fifth Circuit recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." *Id.* (citing *Wilkerson*, 774 F.3d at 855).

Here, Plaintiff claims that he was in isolation for ten days. Even "under the most isolated of conditions," this period of segregation was not excessive in degree. See *Bailey*, 647 Fed. App'x at 476. As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, he does not state a plausible procedural-due-process claim.[5]

---

[5] See *Bailey*, 647 Fed. App'x at 476 (finding that, if the prisoner was confined less than approximately nineteen months in segregation, he would not state a claim even considering that he was in lockdown 23-24 hours each day, that he lacked visitation, that he lacked contact with other prisoners, that he could not attend religious gatherings or educational/vocational programs, that he lacked entertainment and "canteen," that he could rarely use the telephone, and that he could only shower three times per week); see also *Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

Of note, the United States Court of Appeals for the Fifth Circuit once held, where a plaintiff claimed that two prison officials filed false charges against him, that the plaintiff's claim was "indistinguishable from a malicious prosecution claim." *Ordaz v. Martin*, 5 F.3d 529 (5th Cir. 1993). The court reasoned, "[e]ven assuming that there is a federally protected right to be free from malicious prosecutions (including false disciplinary charges in the confines of a state prison), however, we have held that 'a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor.'" *Id.* (quoting *Brummett v. Camble,* 946 F.2d 1178, 1180 & n. 2 (5th Cir. 1991)). The court then found that, because the disciplinary proceeding did not terminate in the plaintiff's favor, the plaintiff did not make "an arguable showing that any federally protected right has been violated." *Id.*

However, the Fifth Circuit later held that there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir. 2003). Thus, a prisoner does not state a claim on which relief may be granted when he alleges that a defendant falsely charged him with a disciplinary infraction. See *Palmisano v. Bureau of Prisons*, 258 F. App'x 646, 648 (5th Cir. 2007) ("[The plaintiff's] assertion that defendants brought false charges against him does not alone implicate his constitutional rights."); *Williams v. Dretke*, 306 F. App'x 164, 166 (5th Cir. 2009); *Figgs v. Vrazel*, 106 F. App'x 260, 261 (5th Cir. 2004). Even assuming there is a "freestanding constitutional right to be free from malicious prosecution," Plaintiff does not allege that his disciplinary charges terminated in his favor. See *Sanchez v. Grounds*, 591 F. App'x 263, 264 (5th Cir. 2015) (affirming dismissal, where the plaintiff claimed that a defendant filed a false disciplinary charge, because the plaintiff "did not make the required showing that the disciplinary case terminated in his favor . . . .").

Defendants' alleged actions did not violate any other constitutional right. See generally *Barber v. Quarterman*, 437 F. App'x 302, 304 (5th Cir. 2011) (analyzing a claim that officials "falsified a report" as claimed due process violation and noting that the plaintiff did not identify any other constitutional violation); *LeBlanc v. Louisiana State Penitentiary*, 2015 WL 5011984, at *4 (M.D. La. July 28, 2015), report and recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015); *Ryals v. El Paso Cty.*, 2015 WL 3540951, at *10 (W.D. Tex. June 3, 2015). Accordingly, the Court should dismiss this claim.

**3. Retaliation**

Plaintiff claims that, because he and other prisoners complained that Kilder sweated and coughed while handling their food and drinks, White and Kilder retaliated, placing Plaintiff in a strip cell where the "water was off" for twenty-four hours, clothing him in a gown, losing or destroying his shower shoes and clothing, verbally abusing him, and sexually abusing him. [doc. #s 1, p. 4; 10-1, pp. 5-7].

To prevail on a retaliation claim, a plaintiff must prove: (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). Courts must "carefully scrutinize" retaliation claims to "assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).[6]

---

[6] "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

9

A plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995). "Mere conclusory allegations of retaliation are insufficient[,] . . . a plaintiff must allege more than his personal belief that he has been the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). With respect to the third prong above, "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013).

Here, the Court should dismiss Plaintiff's claim because, instead of alleging that White and Kilder retaliated because Plaintiff exercised a specific constitutional right, Plaintiff alleges that they retaliated because he and other prisoners "complained of Sergeant Kilber sweating and coughing when handling" their food and drinks. [doc. # 10-1, p. 6].

In *Hanna v. Maxwell*, 415 F. App'x 533, 536 (5th Cir. 2011), the Fifth Circuit found that a plaintiff who "alleged retaliation after threatening to file a lawsuit during a confrontation with corrections officers" did not state a plausible claim because, while "complaining about the conduct of corrections officers through proper channels is a constitutionally protected activity," the plaintiff "did not allege that he suffered retaliation after complaining through proper channels . . . ." In *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986), the Fifth Circuit held that a guard "may not harass an inmate in retaliation for the inmate complaining to supervisors about the guard's conduct." See also *Guillot v. Day*, 139 F.3d 900 (5th Cir. 1998).

Here, Plaintiff does not allege that, prior to the alleged retaliation, he pursued his complaint against Kilder through the "proper channels" (i.e. through an administrative remedy grievance or through another proper means by which to raise a grievance), and he does not allege

10

that he complained to Kilder's supervisor about Kilder's conduct.[7] See *Peters v. Quarterman*, 252 Fed. Appx. 705, 706 (5th Cir. 2007) (oral threat to expose corrections officer's alleged misconduct is not exercise of specific constitutional right); *Thomas v. Thomas*, 46 F. App'x 732 (5th Cir. 2002) ("Thomas does not indicate that he complained about this conduct to Major Thomas' supervisors and then suffered retaliation for exercising his constitutional right of access to the courts."); See *Cardona v. Tuite*, 258 F. App'x 643, 644 (5th Cir. 2007) (finding, because the prisoner did not utilize the internal grievance process, that a prisoner did not exercise a First Amendment right when he informed an officer that he disagreed with the officer's order to wear his cap "frontwards."); *Spann v. Strain*, 2016 WL 7626574, at *8 (E.D. La. Dec. 9, 2016), report and recommendation adopted, 2017 WL 24812 (E.D. La. Jan. 3, 2017), aff'd, 726 F. App'x 265 (5th Cir. 2018); *Jasmine v. Cain*, 2014 WL 971989, at *8 (M.D. La. Mar. 12, 2014).

The Court should dismiss this claim.

**4. Lost or Destroyed Property**

Plaintiff claims that White and Kilder lost or destroyed his shower shoes, his "gray Hanes sweater," his "pair of white long Hanes socks," his pair of gray Hanes socks, his "white Hanes T-shirt," and his "pair of Hanes boxers . . . ." [doc. #s 1, p. 4; 10-1, pp. 4-7]. Plaintiff also suggests that, on June 26, 2019, Colonel Lonnie Nail either lost or stole a letter Plaintiff tried to send to an attorney in Pennsylvania. [doc. # 10-1, p. 5].

---

[7] Plaintiff maintains that he has utilized the grievance process before, filing unrelated complaints through David Wade Correctional Center and through the Louisiana Department of Public Safety and Corrections. [doc. # 1, p. 6].

A post-deprivation tort cause of action in state law is, under the *Parratt/Hudson*[8] doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property, without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized."[9] *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (quoting *Hudson*, 468 U.S. at 533-35). Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (citing Louisiana Civil Code Article 2315 and observing that "Louisiana law affords an opportunity to redress intentional torts under the same section of the Code by which negligence is remedied."); *Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. Ct. App. 2008) (recognizing the tort of conversion).[10]

Here, Plaintiff does not allege that he was deprived of his property by anyone acting under an official policy, custom, or procedure; rather, he describes random and unauthorized action. Plaintiff should, if he wishes, pursue relief under state law in state court because

---

[8] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

[9] "The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

[10] See also *Suria v. Wathen*, 616 F. App'x 175 (5th Cir. 2015) (affirming dismissal of a claim, that correctional officers lost an inmate's personal property through gross negligence and dereliction of duty, on grounds that "negligent conduct is not actionable under § 1983."); *Krause v. Leonard*, 352 F. App'x 933 (5th Cir. 2009) (prisoner's claim, that police lost property that was inside his impounded automobile and allowed thieves to steal from his trailers during his time in jail, was not cognizable under Section 1983 because state law provided a meaningful post-deprivation remedy).

Louisiana law provides adequate remedies for this alleged conduct. Accordingly, the Court should dismiss Plaintiff's claim.[11]

**5. Conditions of Confinement**

Plaintiff tentatively claims that White and Kilder confined him under unconstitutional conditions, alleging that they clothed him in a gown and placed him in a strip cell where the "water was off" for twenty-four hours. [doc. #s 1, p. 4; 10-1, pp. 5-7].

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[12] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an

---

[11] To the extent Plaintiff claims that, by losing or stealing his letter, Nail violated his right of access to the courts, Plaintiff does state a plausible claim because he does not allege that he suffered a cognizable injury. To state an access-to-court claim, a plaintiff must allege a cognizable injury. See *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Walker v. Navarro Cty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) ("[F]or Walker's claim to rise to the level of a constitutional violation of his right to access to the courts, he must allege that his position as a litigant was prejudiced by the mail tampering.").

[12] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[13] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff does not allege that the conditions under which he was confined resulted in an extreme deprivation of a minimal civilized measure of life's necessities. First, he does not identify a minimal civilized measure of life's necessities of which he was deprived as a result of being clothed in a gown. Second, while he claims that the cell lacked water for twenty-four hours, he does not specify whether, for instance, he lacked adequate hydration, whether he could not shower, or whether he could not remove waste from the cell. Plaintiff's general allegation of a lack of water in the cell for twenty-four hours does not, objectively, reflect an extreme

---

[13] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

deprivation. In the same way, the deprivation Plaintiff did endure does not, under Plaintiff's allegations, amount to a substantial risk of serious harm. The Court should dismiss this claim.[14]

**6. Conclusory Claims**

Plaintiff claims that White and Kilder verbally and sexually abused him. [doc. # 1, p. 4].

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, even construed liberally and in his favor, Plaintiff's claims are entirely conclusory. He does not disclose enough facts to state plausible claims. Accordingly, the Court should dismiss these claims.

**7. Failing to Answer Grievances**

Plaintiff claims that Warden Goodwin and Deputy Warden Rachel failed to answer his "lost property claim form," in which he requested the return of his property that Captain White and Sergeant Kilder allegedly lost. [doc. # 10-1, pp. 4, 7]. A plaintiff, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed

---

[14] Plaintiff alleges that Kilder and White violated Louisiana Department of Public Safety and Corrections' policy when they placed him in a strip cell. [doc. # 10-1, p. 7]. "[T]he failure of prison administrators to follow prison rules and regulations does not, without more, give rise to a constitutional violation." *Moreno v. Bunton*, 193 F.3d 518 (5th Cir. 1999); see *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("The [LDPSC] and [Corrections Corporation of America] internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal footnotes removed). Here, to the extent Plaintiff seeks relief solely for the violation of a Department of Corrections' policy, he does not raise a plausible claim. The Court should dismiss this ostensible claim.

pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); see *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) (holding that "claims that the defendants violated . . . constitutional rights by failing to investigate . . . grievances fall short of establishing a federal constitutional claim."); *Geiger*, 404 F.3d at 371. Accordingly, the Court should dismiss this claim.

### 8. Supervisory Liability

Plaintiff claims, essentially, that Defendants LeBlanc, Goodwin, Rachel, and Sherman are vicariously liable for others' actions. For instance, Plaintiff alleges that Secretary LeBlanc and Warden Goodwin are "responsible for failure to train/supervise Defendants" Rachel, Sherman, Nail, White, and Kilder. [doc. # 10-1, p. 4]. Secretary James M. LeBlanc is "responsible for the operations of all Louisiana Department of Public Safety and Corrections[,] including David Wade Corr. Ctr." *Id.* at 3. Warden Goodwin is "responsible for operations/welfare of David Wade Corr. Ctr." *Id.* Deputy Warden Rachel and Assistant Warden Sherman are "responsible for operations/welfare of David Wade Corr. Ctr. and David Wade Corr. Ctr. prisoners . . . ." *Id.* at 3-4. Assistant Warden Kayla Sherman is responsible for the loss or theft of Plaintiff's letter because Sherman "is in charge of/responsible for" the legal mailing system. *Id.* at 8.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient

16

causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Secretary LeBlanc, Warden Goodwin, Assistant Warden Rachel, and Warden Sherman cannot be vicariously liable for the actions of their subordinates. Plaintiff does not allege that these defendants participated in a constitutional deprivation or implemented a policy so deficient that it deprived Plaintiff of his constitutional rights.

Plaintiff does allege, conclusorily, that LeBlanc and Goodwin failed to train or supervise their subordinates; however, as above, this alleged failure to train or supervise did not result in a violation of Plaintiff's constitutional rights. See *Barber v. Quarterman*, 437 F. App'x 302, 304–05 (5th Cir. 2011) ("According to Barber, the director of the Texas Department of Criminal Justice and the warden of the prison should be held liable for failing to properly train the other officials on the procedures to follow when a prisoner reports that his safety is in danger and for implementing unconstitutional policies that were inadequate to protect prisoners. However, because the policies have resulted in no violation of Barber's rights, he cannot succeed."); *Sanchez v. Grounds*, 591 F. App'x 263, 265 (5th Cir. 2015) (finding, where the plaintiff alleged that a warden "created an unwritten custom and policy to punish inmates, through demotion in classification, without notice and a hearing[,]" that the plaintiff's claim was unavailing "because the purported policy does not result in any constitutional injury."). The Court should dismiss these claims.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Jarvis Brown's claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief

17

may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for appointed counsel, [doc. # 3], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 2nd day of October, 2019.

_____
Karen L. Hayes
United States Magistrate Judge